KATHERINE PARKER
Assistant United States Attorney
Chief, Civil Division

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
ERIC KAUFMAN-COHEN
Attorney in Charge
FRANK J. ANDERS
Trial Attorney
U.S. Department of Justice
Aviation, Space & Admiralty Litigation
Civil Division, Torts Branch, West Coast Office
450 Golden Gate Avenue, Room 7-5395
P.O. Box 36028
San Francisco, California 94102-3463
Telephone: (415) 436-6630
Facsimile: (415) 436-6632
E-mail: eric.kaufman-cohen@usdoj.gov; franklin.j.anders@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>WILLIAM J. MAIDHOF,<br><br>　　　　Defendant. | Case No.: **'23CV0464 JM   AHG**<br><br>IN ADMIRALTY<br><br>**VERIFIED COMPLAINT OF THE UNITED STATES** |

　　　　Plaintiff, the United States of America, through its undersigned counsel, files this Complaint, and alleges upon information and belief as follows:

## NATURE OF THE ACTION

　　　　1.　　This is an admiralty and maritime claim against defendant WILLIAM J. MAIDHOF, *in personam*, as hereinafter more fully appears, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. The United States expressly reserves the right to amend this Complaint to include, *inter alia*, adding additional claims and additional parties.

## JURISDICTION AND VENUE

3. The United States is authorized to bring this suit and the Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1345 and 33 U.S.C. § 2717.

4. Venue is properly in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391 and 33 U.S.C. § 2717.

5. The United States brings this action on behalf of the Oil Spill Liability Trust Fund (hereinafter, the "Fund"), pursuant to the Oil Pollution Act of 1990 (hereinafter, the "OPA"), 33 U.S.C. § 2701 *et seq.*, to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees.

6. Pursuant to the OPA, 33 U.S.C. § 2712(f), the United States has acquired by subrogation, or may in the future acquire by subrogation, the rights of any claimant or State paid compensation from the Fund. The United States specifically reserves the right to amend this Verified Complaint to assert any or all such subrogated rights and claims, pursuant to the OPA, 33 U.S.C. § 2712(f). Pursuant to the OPA, 33 U.S.C. § 2717(f)(2), and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action to recover further removal costs or damages that will be binding on any subsequent action to recover further response costs.

## PARTIES

7. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, is believed to reside in the State of California and within this district and within the jurisdiction of this Court.

8. At all material times the fishing vessel named the MIDWAY ISLAND ("F/V MIDWAY ISLAND") was a "vessel" within the meaning of, inter alia, 1 U.S.C. § 3 and the OPA, 33 U.S.C. § 2701(37).

9. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, owned the F/V MIDWAY ISLAND.

10. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, was owner *pro hac vice* of the F/V MIDWAY ISLAND.

11. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, operated the F/V MIDWAY ISLAND.

12. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, managed the F/V MIDWAY ISLAND.

13. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, demise chartered the F/V MIDWAY ISLAND.

14. At all times material herein, defendant WILLIAM J. MAIDHOF, based upon information and belief, controlled the F/V MIDWAY ISLAND.

15. At all times material herein, and by reason of the matters alleged in this Complaint, defendant WILLIAM J. MAIDHOF is a "responsible party" within the meaning of the OPA, 33 U.S.C. §§ 2701-2720.

16. At all times material herein, defendant WILLIAM J. MAIDHOF, as well as other persons or entities whose identities are not yet known, were at all material times, and pursuant to information or belief, acting as agents and/or alter egos of each other with respect to the matters alleged in this Complaint and are therefore responsible and liable, jointly and severally, for all of each of the others' obligations, acts, omissions, and strict liability with respect to the matters alleged in this Complaint and action.

17. The United States expressly reserves the right to amend this Complaint to, *inter alia*, add additional parties and assert additional claims against WILLIAM J. MAIDHOF.

## GENERAL ALLEGATIONS

18. At all relevant times, F/V MIDWAY ISLAND contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq*.

19. In January 2020, WILLIAM J. MAIDHOF embarked from Los Angeles onboard F/V MIDWAY ISLAND and headed toward the island of Hawaii.

20. On February 3, 2020, F/V MIDWAY ISLAND ran hard aground against a rocky cliff at the base of Wainaku Scenic Point cliff in Hilo Bay, Hawaii. The waters of Hilo Bay, Hawaii are navigable.

21. On February 3, 2020, WILLIAM J. MAIDHOF called 911 about the grounding, and at approximately 5:30 p.m. that day, the Hawaii Fire Department conducted a helicopter rescue. WILLIAM J. MAIDHOF was airlifted from the water and deposited onshore without injury. The Hawaii Fire Department also alerted the United States Coast Guard, Sector Honolulu of the incident.

22. On February 4, 2020, a Coast Guard C-130 aircraft and a Hawaii Department of Natural Resources ("DLNR") small boat conducted an initial survey of the grounding. F/V MIDWAY ISLAND was hard aground, precariously balanced between a sheer 120-foot cliff wall and the rocky, shallow surf zone. WILLIAM J. MAIDHOF told the Coast Guard that F/V MIDWAY ISLAND had an 1800 gallon fuel capacity, with approximately 1200 gallons of oil, 3 gallons of diesel, and two batteries onboard.

23. Coast Guard Sector Honolulu, acting as the Federal On-Scene Coordinator ("FOSC") declared the vessel a substantial threat of oil pollution, and issued a Notice of Federal Interest ("NOFI") to WILLIAM J. MAIDHOF. WILLIAM J. MAIDHOF told the Coast Guard he did not have the financial means to mitigate the threat, so the FOSC assumed the response and accessed the OSLTF

to finance the oil pollution removal operations. The Coast Guard retained Global Diving and Salvage to assess the vessel and prepare a removal plan.

24. On February 6, 2020, members of Coast Guard Sector Honolulu Incident Management Division arrived on-scene to coordinate the response. Based on several drone surveys, the Unified Command planned to lighter F/V MIDWAY ISLAND, and tow it to a berth outside of Wailoa Boat Harbor during the next high tide. By the following day, February 7, 2020, responders had successfully removed a total of 1,352 gallons of oil and oily waste product from F/V MIDWAY ISLAND. Unfortunately, the remaining approximately 30-40 gallons of fuel onboard could not be safely accessed due to the vessel's configuration combined with the dynamic wave and surf environment, causing the vessel to shift starboard. As of February 7, 2020, there remained the following product on F/V MIDWAY ISLAND: (1) 30 gallons of diesel in the starboard wing tank; (2) Five gallons of lube in the engine; and (3) 2-5 gallons of hydraulic oil in hydraulic hoses.

25. The Coast Guard concluded that F/V MIDWAY ISLAND must be removed and stabilized to affect removal of the petroleum that presented a substantial threat of discharge. The Coast Guard further concluded that leaving the F/V MIDWAY ISLAND in place with no further mitigation would have led to the discharge of oil into the navigable waters of the United States. A draft vessel movement and pollution mitigation plan was submitted and reviewed by the Coast Guard Salvage Engineering Response Team, who concurred that the proposed plan of action to remove F/V MIDWAY ISLAND minimized anticipated risk to the extent possible.

26. On February 10, 2020, a team boarded F/V MIDWAY ISLAND to prepare for the tow but discovered flooding in the engine room and fish holds. Concerned that the vessel could not obtain sufficient buoyancy to be safely pulled off the rocks, responders started to formulate alternative plans, including additional in situ removal and reformulation of the tow configuration.

27. By March 17, 2020, responders were able to tow F/V MIDWAY ISLAND off the rocks and bring her dockside to finish the removal activities.

28. On March 20, 2020, responders completed removal of the oil from F/V MIDWAY ISLAND and the FOSC transferred the vessel to the Hawaii Department of Land and Natural Resources, Division of Boating and Recreation. In total, the Coast Guard removed 1,366 gallons of fuel/oil and an additional 220 gallons of oily water from the bilge.

29. On or about March 20, 2020, pursuant to POLREP 4 AND FINAL, the removal action was deemed completed.

30. The removal costs expended on and specifically attributed to this Incident were captured under the Federal Project Number: H20005.

31. This incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal operating and/or safety regulations by WILLIAM J. MAIDHOF and F/V MIDWAY ISLAND, its owners, crew, agents, servants, employees, and others for whom WILLIAM J. MAIDHOF was responsible, all within the privity and knowledge of WILLIAM J. MAIDHOF.

32. During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

33. The Coast Guard National Pollution Fund Center ("NPFC") demanded reimbursement from WILLIAM J. MAIDHOF for all the outstanding removal costs and damages owed by WILLIAM J. MAIDHOF. Despite this demand, WILLIAM J. MAIDHOF has failed to reimburse the costs and damages for which he is liable.

34. As a result of the Incident involving F/V MIDWAY ISLAND and as a result of failure by WILLIAM J. MAIDHOF to pay the full costs resulting from the Incident, an amount in excess of $1,387,418.03 remains as an unpaid balance from monies due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

## AND AS FOR A FIRST CAUSE OF ACTION
## OIL POLLUTION ACT OF 1990

35. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

36. Pursuant to the OPA, 33 U.S.C. § 2701 *et seq.*, each responsible party for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

37. Pursuant to the OPA, and under the circumstances herein, WILLIAM J. MAIDHOF is liable to the United States of America, without limitation, for all the aforesaid costs, damages, and/or disbursements sustained by the United States as a result of each separate Incident.

## AND AS FOR A SECOND CAUSE OF ACTION
## OIL POLLUTION ACT OF 1990

38. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

39. Pursuant to the OPA, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

40. As a result of the incident in this case, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under the OPA.

41. Pursuant to the OPA, and under the circumstances herein, WILLIAM J. MAIDHOF is liable to the United States of America, without limitation, for all such costs, damages, and/or disbursements which may be sustained by the Fund as a result of each separate incident.

42. The aforesaid unpaid removal costs, damages, and/or disbursements of the Fund, as provided in the OPA, are presently in excess of $1,387,418.03.

### AND AS FOR A THIRD CAUSE OF ACTION
### OIL POLLUTION ACT OF 1990

43. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

44. Pursuant to the OPA, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in any subsequent action or actions that WILLIAM J. MAIDHOF is liable for removal costs and damages in any such subsequent action or actions pertaining to each separate Incident.

### AND AS FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF FEDERAL DEBT COLLECTION PROCEDURES ACT
### 28 U.S.C. § 3001, *et seq.*

45. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

46. Despite the liability, including strict liability, of WILLIAM J. MAIDHOF to the United States, all as alleged in this Complaint, on information and belief, WILLIAM J. MAIDHOF, in breach of law, including but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308, have *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

47. All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial.

# AND AS FOR A FIFTH CAUSE OF ACTION
# PRIORITY OF GOVERNMENT CLAIMS
# 31 U.S.C. § 3713

48. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

49. Despite the liability, including strict liability, of WILLIAM J. MAIDHOF to the United States, all as alleged in this Complaint, on information and belief, WILLIAM J. MAIDHOF, in breach of law, has *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

50. All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial.

51. To the extent that WILLIAM J. MAIDHOF, and his officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, have discharged claims or debts to any other person or entity other than the United States, or in the future discharge claims or debts to any person or entity other than the United States in contravention of, *inter alia*, 31 U.S.C. § 3713, WILLIAM J. MAIDHOF, and/or his officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with his authorization, are liable to the United States for the amount of any such payments.

52. With respect to any payments in contravention of 31 U.S.C. § 3713, and pursuant to 31 U.S.C § 3713(b), any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities making such payments are personally liable to the United States for the amount of such payments.

53. The United States shall amend this Complaint to add as defendants, in their individual capacity, any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities who, in contravention of 31

U.S.C. § 3713(a) and (b), have already discharged, or in the future discharge, claims or debts to any person or entity other than the United States.

WHEREFORE, the United States of America prays as follows:

1. That United States of America be granted judgment against defendant WILLIAM J. MAIDHOF, pursuant to the Verified Complaint of the United States herein;
2. That the United States of America be granted declaratory judgment against defendant WILLIAM J. MAIDHOF for pollution removal costs or damages binding on any subsequent action or actions to recover further removal costs or damages, plus interest, costs, disbursements, and attorneys' fees.
3. That the United States have constructive trusts as and against any and all assets of defendant WILLIAM J. MAIDHOF said constructive trusts being available to satisfy the amounts due and owing to the United States pursuant to the matters alleged in this Complaint
4. For prejudgment and post judgment interest in an amount allowed by law;
5. That damages be awarded to the United States according to losses proved at trial;
6. Such other relief as the Court deems just and proper.

Dated: March 14, 2023.

KATHERINE PARKER
Assistant United States Attorney
Chief, Civil Division

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
ERIC KAUFMAN-COHEN
Attorney in Charge

 s/Frank J. Anders
FRANK J. ANDERS
Trial Attorney
U.S. Department of Justice
Aviation, Space & Admiralty Litigation
Civil Division, Torts Branch,
West Coast Office

Attorneys for United States of America

# **VERIFICATION**

FRANK J. ANDERS says:

    I am one of the attorneys for plaintiff, United States of America, herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

    I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: March 14, 2023.

                             s/ Frank J. Anders
                             FRANK J. ANDERS